KELLY, Plaintiffs-Appellants, v. PORTSMOUTH GAS
COMPANY, Defendant-Appellee.

Ohio Appeals, Fourth District, Scioto County.

No. 583.   Decided July 9, 1951.

Kimble, Kimble & Schapiro, Portsmouth, for plaintiffs-appellants.

Bannon, Howland & McCurdy, Portsmouth, for defendant-appellee.

(SKEEL, PJ, HURD, J, of the 8th District; DOYLE, J, of the 9th District sitting by designation in the 4th District.)

## OPINION

Per CURIAM:

This action, commenced by Isaac W. Kelly and Ruby Kelly and directed against The Portsmouth Gas Company, was for damages to a dwelling house occasioned by the explosion of

gas. The tort charged in the petition was a violation of the defendant's duty to the plaintiff in its failure to use ordinary care in keeping its gas meter, attachments and connections in repair and in a safe condition, the result of which caused large quantities of natural gas "to escape from said meter and the attachments and connections thereto." It was alleged that as a proximate result of the claimed negligence the explosion occurred with accompanying damage.

At the conclusion of the trial, the jury returned a verdict for the claimants. Subsequently, the trial judge entered a judgment non obstante veredicto for the defendant. The present appeal is from such judgment.

This has been an unusual case and the record has been read and re-read because of the opposite conclusions reached by the members of the court.

It appears that after the explosion, the gas meter was found broken off from the pipes to which it had been connected and from these pipes gas was escaping. The trial was conducted by the plaintiff on the theory that before the explosion the connections at the meter were "cracked and broken and permitted the meter to fall from its position * * * thereby allowing gas to escape into the basement."

The plaintiffs stated their theory of liability as follows:

"The meter is in evidence indicating that the break by the meter and its connections was caused by the cracking and breaking of the soldered connection. The means of connection and suspension of the meter was as follows: A large iron pipe comes into the premises and along the wall of the basement to the point where the meter was located. An elbow turns downward. After several different connections, this pipe ends up with a nut with threads upon the inside pointed straight down. The meter is then raised up so that a spud sticking out of the top and edge of the meter with threads upon the outside sets up into the nut and the nut is tightened with a wrench, sufficiently tight to seal the connection with the use of a gasket or washer.

"The evidence shows that the particular meter in this case was in fact attached and sealed with a wrench, as before mentioned, by an employee of the Portsmouth Gas Company. The other end of the spud extends down inside a tube or pipe that passes down the side of the meter. There are no threads on the inside of this tube or pipe, or no threads upon the outside of the lower portion of the spud. This connection is obtained by placing the plain surface of the lower part of the spud inside the plain surface of the pipe or tube in the meter and soldering them together.

"The record discloses, and reason would indicate, that in applying a wrench and sufficient pressure to the nut in order to attach the meter, an equal rotary or twisting pressure would be applied to the spud, to cause it to turn inside of the tube or pipe in the meter. There is nothing that opposes any force except a little bit of solder between the spud and the end of the pipe.

"It was this solder which was cracked and broken and permitted the meter to fall from its position on to the floor. The meter was not supported by any strap, hanger or other equipment. The whole weight of the meter rested upon the little bit of solder we have here described." ·

As Judges Skeel and Doyle view the record, the difficulty with the plaintiffs' position is that they seek to establish the fact of negligence from inferences only. It is possible that the solder may have been cracked and the connections so weakened that after several years of usage the material separated and released gas into the room. This fact, however, was not established by proof. Its existence would be mere guess and speculation. The fact that after a terrific explosion the meter was disconnected and gas leaked from a connecting pipe is not sufficient to draw a reasonable inference that the connections or meter leaked gas before the explosion and caused it; nor is the fact that soldered connections were broken off after the explosion sufficient to draw the inference that they were broken before the explosion and caused gas to leak into the basement. It is just as reasonable to draw an inference that the explosion was the sole cause of the breaking of the meter and its connections as it is to draw the inference that the connections were broken before the explosion and permitted gas to escape.

Essential elements in the plaintiffs' case were proof of negligence of the gas company in failing to use ordinary care in keeping its meter attachments and connections in repair and as a proximate result thereof explosion and damage ensued. There is no direct evidence upon these points nor are there any reasonable inferences to be drawn from a fact supported by evidence which tends to prove such elements.

There is testimony showing the use of gas in a hot water heater in the basement of the damaged house. There is no evidence indicating that the defendant company was legally responsible for this appliance or its use. Assuming for the purpose of this discussion that the explosion was caused by natural gas, it is as reasonable to infer that the disastrous gas came from this outlet as it is to infer that the gas came from the meter and its connections.

"In a negligence action it is not sufficient for plaintiff to prove that the negligence of defendant might have caused an injury * * *, but, if the injury complained of might well have resulted from any one of several causes, it is incumbent upon plaintiff to produce evidence which will exclude the effectiveness of those causes for which the defendant is not legally responsible."

**Gedra v. Dallmer, 153 Oh St 258.**

The majority of this court are of the opinion that the case now under consideration is ruled by the pronouncements in **St. Mary's Gas Co. v. Brodbeck, Admr., 114 Oh St 423,** and **Sobolovitz v. Oil Co., 107 Oh St 204.**

We find no error prejudicial to the rights of the appellants and the juidgment will be affirmed.

Judgment affirmed. Exceptions noted.

DOYLE, J, SKEEL, J, concur.
HURD, J, dissents.

HURD, J. (Dissenting)

This was the second trial of this case. In the first trial, a verdict was rendered for the plaintiffs in the sum of $6,500.00. This sum being in excess of the amount prayed for in plaintiffs' petition, the court granted a remittitur, reducing the verdict to the amount prayed for and then overruled the defendant's motion for new trial. On appeal to the Court of Appeals, the judgment was reversed solely upon the finding that there had been error in the charge of the Court. The second trial again resulted in a verdict for the plaintiff in the amount of plaintiffs' claim. Thereafter, and before judgment, the defendant filed a motion for judgment non obstante veredicto. The trial court sustained this motion non obstante veredicto and it is this part of the case that is before us for review.

It is interesting to note that when this case was first reviewed by the Court of Appeals, Judge Gillen, speaking for a unanimous court, while reversing for error in the charge, made the following statement:

"This Court is of the opinion that sufficient direct testimony was adduced to warrant a submission of the issues to a jury and that the rule prohibiting an inference upon inference was not violated. The trial court properly overruled the motion for a directed verdict as well as the motion for judgment notwithstanding the verdict."

I agree fully with this conclusion. It is my opinion, therefore, that the judgment should be reversed and the cause

remanded with instructions to enter judgment upon the verdict. This would leave before the trial court the sole question of ruling upon the motion for a new trial.